Slip Op. 17-170

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| INNER MONGOLIA JIANLONG BIOCHEMICAL CO., LTD., | |
| Plaintiff, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 16-00187 |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant, | |
| and | |
| CP KELCO US, INC., | |
| Defendant-Intervenor. | |

## <u>OPINION AND ORDER</u>

[The court remands the rescission of the antidumping duty new shipper review.]

Dated: December 21, 2017

*Robert G. Gosselink*, *Jonathan M. Freed*, *Jarrod M. Goldfeder*, Trade Pacific PLLC, of Washington, D.C., for plaintiff.

*Kelly A. Krystyniak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel on the brief was *Catherine D. Miller*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Nancy A. Noonan*, *Matthew L. Kanna*, *Friederike S. Goergens*, Arent Fox LLP, of Washington, D.C., for defendant-intervenor.

Goldberg, Senior Judge: Plaintiff Inner Mongolia Jianlong Biochemical Co., Ltd.

("Jianlong") appeals, Mot. for J. on Agency R., ECF No. 33, from the decision of the U.S.

Department of Commerce ("Commerce" or "the Department") to rescind its antidumping duty

new shipper review ("NSR").  *Xanthan Gum from the People's Republic of China*, 81 Fed. Reg.

56,586 (Dep't of Commerce Aug. 22, 2016) (rescission of NSR) ("*Rescission*") and

accompanying Issues & Decision Mem. ("I&D Mem.").  In particular, Jianlong challenges

Commerce's determinations that: A) Jianlong's NSR request did not comply with Commerce's

regulations and B) Jianlong's reported sale was non-*bona fide*.  Because Commerce's reasoning

as to both is unsupported in the record, the court grants Jianlong's motion and remands the

proceedings to Commerce.

## <u>BACKGROUND</u>

On June 4, 2013, Commerce entered an antidumping duty order on xanthan gum from

China at a rate of 154.07%.  *Xanthan Gum from the People's Republic of China*, 78 Fed. Reg.

33,351 (Dep't of Commerce June 4, 2013) (final determ.), *amended by Xanthan Gum from the*

*People's Republic of China*, 78 Fed. Reg. 43,143 (Dep't of Commerce July 19, 2013) (am. final

determ.).  Jianlong, a Chinese shipper of xanthan gum, thereafter provided free samples to

[[          ]] in three different intervals: three samples totaling [[            ]] for quality

assurance purposes in January 2014; [[               ]] [[            ]] took while

conducting a plant audit at Jianlong's facilities in March 2014; and, finally, samples of [[

]] in June 2015.  Section C & D Resp., Joint Appendix, ECF No. 51 ("J.A.") Tab 5 at I-3–

4; Third Suppl. Section D Questionnaire Resp., J.A. Tab 8 at SuppD3-6, Ex. SD3-4.  Near the

end of that time period, Jianlong established a U.S. entity, Jianlong USA Corporation ("Jianlong

USA"), and from May 29 to June 2 Jianlong, through Jianlong USA, negotiated a sale of xanthan

gum to [[            ]].  J.A. Tab 5 at I-4.  Per the terms of that sale, on June 30, 2015,

Jianlong delivered [[               ]] of xanthan gum to [[             ]] at a rate of roughly

[[                        ]], for a total price of [[                    ]].  Req. for NSR, J.A. Tab 1, Ex. 1

(June 26, 2015 Invoice); Section A Questionnaire Resp., J.A. Tab 4, Ex. A-5 (Purchase Order);

*see also* Prelim. *Bona Fide* Sales Analysis, J.A. Tab 10 at 4.

On July 31, 2015, Jianlong requested a NSR, identifying its June 30, 2015 shipment as its

only entry for consumption under 19 C.F.R. § 351.214(b)(2)(iv)(A).  J.A. Tab 1, ¶ 5

("Documentation in Exhibit 1 establishes the date on which subject merchandise produced and

exported by Jianlong, was first entered, or withdrawn from warehouse, for consumption in the

United States (*i.e.*, the 'import date')."), Ex. 1.  Commerce then initiated the NSR on August 27,

2015.  *Xanthan Gum from the People's Republic of China*, 80 Fed. Reg. 52,031 (Dep't of

Commerce Aug. 27, 2015) (initiation of NSR).  In an initial and then supplemental response to

questionnaires from Commerce, Jianlong explained that it had earlier "provided" samples to

[[                  ]] and [[                  ]] also "took" others during its audit of Jianlong's plant.

J.A. Tab 5 at I-3–4; J.A. Tab 8 at SuppD3-6.  Jianlong stated that "no consideration [was] given

for any of the samples."  J.A. Tab 8 at SuppD3-6.

On March 22, 2016, Commerce preliminarily determined that: A) Jianlong had failed to

report certain entries of subject merchandise and B) Jianlong's one sale was non-*bona fide* under

a "totality of the circumstances" test.  *Xanthan Gum from the People's Republic of China*, 81

Fed. Reg. 15,240 (Dep't of Commerce Mar. 22, 2016) (prelim. rescission of NSR).  Ultimately,

in its final *Rescission*, Commerce adopted these findings.  In sum, Commerce concluded that

Jianlong's omission of sample shipments proved fatal in its meeting the regulatory requirements

imposed by 19 C.F.R. § 351.214(b)(2)(iv)(A).  I&D Mem. 4.  Additionally, Commerce rejected

rebutting and clarifying information from Jianlong and also found that Jianlong's sale to [[

]] was atypical, and thus non-*bona fide*, because of the timing of the sale, the establishment of Jianlong USA, and the sales price.  *Id.* at 9–14.

On appeal, Jianlong challenges multiple aspects of Commerce's *Rescission*.  Primarily, Jianlong disputes the "totality of the circumstances" test as conducted by Commerce as well as the Department's determination that 19 C.F.R. § 351.214(b)(2)(iv)(A) required Jianlong to identify its sample shipments in its NSR request.  Relatedly, Jianlong contends that its submission of factual information was improperly rejected by Commerce as untimely filed.

## JURISDICTION AND STANDARD OF REVIEW

This court's jurisdiction rests in 28 U.S.C. § 1581(c).  Commerce's decisions will be sustained unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).  In reviewing those decisions, this court examines the entire record, including that which detracts from the ultimate decision, to determine whether the record evidence and any reasonable inferences therefrom are sufficient to support Commerce's conclusions.  *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (citation omitted); *Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Tech., Salaried & Mach. Workers*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (citation omitted).

## DISCUSSION

This dispute presents two discrete questions for consideration.  First, whether Commerce acted arbitrarily in rescinding Jianlong's NSR due to a purported failure to meet the regulatory requirements under 19 C.F.R. § 351.214(b)(2)(iv)(A).  Second, whether substantial evidence supports Commerce's decision that Jianlong's sale was non-*bona fide*.  The court remands to Commerce for further consideration of both issues.

*a. Legal Framework*

Congress has charged Commerce with reviewing shipments of goods that are subject to

antidumping orders for the purposes of determining the price margin for antidumping duties.  19

U.S.C. § 1675(a).  New shippers otherwise subject to these antidumping orders have an

opportunity to obtain a new dumping margin calculation by requesting a NSR.  19 U.S.C.

§ 1675(a)(2)(B)(i).  The new shipper must establish that it: A) has not previously exported

merchandise that was subject to an antidumping duty order to the U.S. during the period of

investigation and B) is not "affiliated . . . with any exporter or producer who exported the subject

merchandise to the United States . . . during that period . . . ."  19 U.S.C. § 1675(a)(2)(B)(i)(I)–

(II).  If the new shipper meets both of those requirements, Commerce will "conduct a

review . . . to establish an individual weighted average dumping margin . . . ."  19 U.S.C.

§ 1675(a)(2)(B)(i).  An exporter must initiate the review within a year of the first entry of the

subject merchandise, 19 C.F.R. § 351.214(c), and the request must include, among other

information:

> A) [t]he date on which subject merchandise of the exporter or producer making the request
> was first entered, or withdrawn from warehouse, for consumption, or, if the exporter or
> producer cannot establish the date of first entry, the date on which the exporter or producer
> first shipped the subject merchandise for export to the United States; B) [t]he volume of
> that and subsequent shipments; and C) [t]he date of the first sale to an unaffiliated customer
> in the United States . . . .

19 C.F.R. § 351.214(b)(2)(iv)(A)–(C).

Once Commerce has established that a new shipper has met the regulatory requirements

for requesting a NSR, it calculates a dumping margin "based solely on the bona fide United

States sales . . . made during the period covered by the review."  19 U.S.C. § 1675(a)(2)(B)(iv).

In the absence of an "entry and sale to an unaffiliated customer," Commerce may rescind the

NSR.  19 C.F.R. § 351.214(f)(2)(i).  Individual transactions may be characterized as non-*bona*

*fide* if they are found to be, in light of all the circumstances, "unrepresentative or extremely

distortive." *See, e.g.*, *Tianjin Tiancheng Pharm. Co. v. United States*, 29 CIT 256, 259, 366 F.

Supp. 2d 1246, 1249 (2005) (citation omitted).  If Commerce excludes all scrutinized sales as

non-*bona fide*, the Department "necessarily must end the review, as no data will remain on the

export price side of Commerce's antidumping duty calculation."  *Id.*

     b.  *Commerce's Determination that Jianlong Had Failed to Meet the Regulatory
        Requirements for Requesting a NSR*

       This court's standard of review demands that Commerce support its rescission of

Jianlong's NSR with a well-reasoned decision, sufficiently explaining why the agency

determined that Jianlong's NSR request did not comply with the Department's regulations.  *See*

*Atar S.R.L. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013) (quoting *Wheatland Tube Co.*

*v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998)).  As part of its review under 19 U.S.C.

§ 1516a(b)(1)(B)(i), the court must "first ask whether Commerce articulated an adequate[, non-

arbitrary] reason for" requiring Jianlong to report its sample shipments in its request for a NSR.

*See Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir.

2012) (applying the arbitrary and capricious standard to "the agency's reasoning" and the

substantial evidence standard to that court's "review of factual determinations.").  This court is

not permitted to "supply a reasoned basis for [Commerce's] action that the agency itself has not

given."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

43, 103 S. Ct. 2856, 77 L. Ed. 443 (1983) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67

S. Ct. 1575, 91 L. Ed. 1995 (1947)).  Thus, so as to prevent this court from "substitut[ing] its

judgment for that of the agency," *id.*, Commerce must adequately articulate the analytical path it

undertook to arrive at its conclusions.  Here, Commerce's anemic reasoning fails to meet this

standard such that the court must remand for further explanation.

Commerce concluded that Jianlong failed to meet the Department's regulatory requirement for requesting a NSR because Jianlong's "first sample shipment in January 2014 should have been reported in [its] request for a NSR . . . ." I&D Mem. 5.  In finding that Jianlong "did not satisfy the requirements for requesting a NSR," *id.*, Commerce necessarily determined that the sample shipments were entered for consumption under 19 C.F.R. § 351.214(b)(2)(iv)(A).  Such an inference is inescapable as there would be no need for Jianlong to identify the sample shipments if they had not been entered for consumption.  *See* 19 C.F.R. § 351.214(b)(2)(iv)(A).  In so concluding, Commerce cited no consistent departmental practice related to sample shipments, but rather relied on "the plain language of the regulatory requirements [] for requesting a NSR."  I&D Mem. 5.

In the face of potentially conflicting treatments of sample shipments, Commerce has failed to identify its practice such that the court is unable to sustain the Department's decision on the grounds invoked by the agency.  *See State Farm*, 463 U.S. at 43.  While Commerce may maintain multiple divergent practices for the treatment of particular issues, the Department must justify why one, and not another, governs in a particular case.  *See Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1276, 587 F. Supp. 2d 1303, 1307 (2008).  Commerce's recent decision in *Certain Polyester Stable Fiber from the People's Republic of China*, 81 Fed. Reg. 4,613 (Dep't of Commerce Jan. 27, 2016) (final determ.) highlights the Department's varying approaches.  There, Commerce determined that a single sample shipment was a non-reviewable transaction for the purposes of a NSR and the NSR could not proceed in the absence of non-sample shipments.  *Id.*  Here, Commerce failed to identify how it treats sample shipments as entries for consumption under 19 C.F.R. § 351.214(b)(2)(iv)(A), but did cite to *Marvin Furniture (Shanghai) Co. v. United States*, 744 F.3d 1319, 1322–25 (Fed. Cir. 2014) as a prior

instance in which the Department had considered sample shipments as entries for consumption. I&D Mem. 4–5. However, that one case with a distinguishable set of facts does not constitute a practice in this area.[1]

Under the reasoning of *Certain Polyester Stable Fiber from the People's Republic of China*, if Jianlong had identified its January 2014 sample shipments, it could have pointed only to non-reviewable sample shipments in the one-year period of review following that entry. Instead, Jianlong chose to submit its NSR request once it had completed a reviewable shipment. Such an understanding of the treatment of sample shipments is reasonable in light of Commerce's regulations and its decision in *Certain Polyester Stable Fiber from the People's Republic of China*, which potentially conflicts with *Marvin Furniture*. Commerce's differing interpretations seem to present Jianlong with an unworkable rubric for this transaction under which Jianlong could have either: A) reported its non-reviewable sample shipments prior to making a reviewable sale, leading to Commerce's rescission of the NSR, *see Certain Polyester Stable Fiber*, 81 Fed. Reg. at 4,614, or B) chose to wait to report those sample shipments until a reviewable shipment had occurred, risking a denial for failure to seek a NSR within one year. *See* 19 C.F.R. § 351.214(c) (triggering Commerce's review based on entries for consumption). Thus, Jianlong's NSR request seems to have been destined for rescission unless it could have aligned its sample shipments and its initial reviewable shipment within the same one-year period of review, something not required by either 19 U.S.C. § 1675 or Commerce's regulations.

---

[1] In *Marvin Furniture*, Commerce rescinded Marvin's NSR because Marvin "did not report [sample] entries" and, thus, Commerce determined that Marvin had not met the regulatory requirements because it "failed to submit a request based on the date and volume of its first entry of subject merchandise." 744 F.3d at 1322. However, *Marvin Furniture* is distinguishable because the request for a NSR involved shipments that the exporter admitted were entered "for consumption." *Id.* at 1321–22. Here, Jianlong has made no such concession, but rather maintains that the samples were not "consumed" in the U.S.

As a result, there remains some doubt as to whether it is reasonable for Commerce to

consider sample shipments of a negligible amount provided without consideration as entries for

consumption in accordance with 19 C.F.R. § 351.214(b)(2)(iv)(A).  However, in the absence of a

well-reasoned decision by Commerce, the court is unable to discern Commerce's practice and

cannot properly evaluate Commerce's conclusions.  *See Diamond Sawblades Mfrs. Coal. v.*

*United States*, 612 F.3d 1348, 1360 (Fed. Cir. 2010).  As such, the court need not—and cannot—

address whether substantial evidence supports Commerce's application of 19 C.F.R.

§ 351.214(b)(2)(iv)(A) to the facts of Jianlong's particular NSR.  *See Changzhou Wujin*, 701

F.3d at 1377.  Without the benefit of a clear articulation of Commerce's reasoning, "the court is

powerless to affirm the administrative action . . . ."  *Id.* at 1379 (citation omitted).  Thus, the

court remands to Commerce for a more fulsome consideration of Jianlong's sample shipments as

entries for consumption and an articulation of Commerce's practice as it relates to the

identification of sample shipments in a request for a NSR.

   *c.   Commerce's Determination that Jianlong's Sale Was Non-*Bona Fide

   While Commerce did apply the proper legal test, there is insufficient record evidence to

support the Department's conclusion that the totality of the circumstances show that Jianlong's

sale to [[                    ]] was a non-*bona fide* transaction.

   Commerce employs a "totality of the circumstances" test to determine if a sale involved

in a NSR is "unrepresentative or extremely distortive," *Tianjin Tiancheng*, 29 CIT at 259, 366 F.

Supp. 2d at 1249 (citation omitted), so as to suggest that the transaction should be excluded as a

non-*bona fide* sale.  In conducting this analysis, Commerce considers a host of factors which

may indicate that the sale in question is one that "is not likely to be typical of those which the

producer will make in the future . . . ."  *Id.* (citation omitted).  No single factor can definitively

resolve Commerce's inquiry and the specific factors to be considered depend on the facts of the

case. *Catfish Farmers of Am. v. United States*, 33 CIT 1258, 1262–63, 641 F. Supp. 2d 1362,

1369 (2009).

Here, Commerce properly considered the establishment of a U.S. affiliate, the timing of

the sale to [[                    ]], and the sales price. *See Tianjin Tiancheng*, 29 CIT at 259, 366 F.

Supp. 2d at 1250. However, there is not substantial evidence to support a "totality of the

circumstances" finding that Jianlong's sale to [[              ]] was a non-*bona fide* transaction.

First, Commerce's analysis of the formation of Jianlong USA does not adequately

support its conclusion. Commerce determined that "the lack of sales activity and the lack of

evidence of ongoing U.S. commercial operations" was sufficient to "raise[] questions as to

whether [Jianlong]/Jianlong USA made the sale in order to obtain a NSR and whether the

transaction is indicative of normal commercial practices." I&D Mem. 12. The latter does not

necessarily follow from the former and Commerce cites to no practice or concrete evidence[2] that

would compel such a result. *See id.* Rather, the Department relies on inferences unsupported by

substantial evidence. *See id.* This court's standard of review requires more from Commerce

than reference to a dearth of evidence and a conclusion based upon mere speculation. *See Thai

Plastic Bags Indus. Co v. United States*, 37 CIT __, __, 904 F. Supp. 2d 1326, 1332 (2013)

(citation omitted). Commerce's analysis did not adequately account for the prior relationship

between Jianlong and [[                    ]],[3] which included a plant inspection and a developing

---

[2] The only record evidence referenced by Commerce allegedly "supporting the notion that Jianlong USA was established for the sole purpose of [Jianlong's] single sale for this NSR" is Section A Questionnaire Resp., J.A. Tab 4, Ex. A-5. I&D Mem. 12. This exhibit consists of a series of communications and documents exchanged between Jianlong USA and [[              ]]. J.A. Tab 4, Ex. A-5. There is no explanation from Commerce—not to mention very little from the record itself—as to how this particular record evidence supports Commerce's ultimate conclusion that that Jianlong USA was established for the sole purpose of instituting a NSR. *See id.*

[3] Commerce merely mentioned that Jianlong "had an established relationship with its first unaffiliated customer over a year and a half before the sale," but did not adequately contemplate the significance of that fact. I&D Mem. 12.

relationship over at least a year and a half, and did not attempt to grapple with the stated

purposes for which Jianlong USA was established, "to provide better service for customers in the

United States . . . ." J.A. Tab 5 at I-4.  Sufficient consideration of these factors was lacking from

Commerce's analysis and the Department ought to weigh their import as part of a holistic

"totality of the circumstances" analysis.

Next, Commerce's determinations as to the timing of the sale lacked the requisite

substantial evidence needed to support Commerce's decision.  Commerce's main contention was

that because the reviewable "transaction was completed towards the end of the [period of

review]" and past departmental experience suggested that such timing was suspicious, Jianlong

must have "timed the sale to occur before the end of the [period of review] for the purposing

[*sic*] of obtaining a NSR."  I&D Mem. 11.  Commerce must rely on more than suspicion,

speculation, and innuendo to support its conclusions.  *See Thai Plastic Bags*, 37 CIT at __, 904

F. Supp. 2d at 1332.  The Department's reference to a single prior NSR rescission, *Crystalline

Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic

of China*, 80 Fed. Reg. 55,090 (Dep't of Commerce Sept. 14, 2015) (rescission of NSR), does

not adequately support the Department's conclusions.  Lacking further consideration, this one

reference does not adequately describe Commerce's practice or tie that prior decision to this

particular set of facts. Without more, the court cannot sustain Commerce's determination.

Finally, Commerce's reasoning that the sales price of the [[                   ]] transaction

was suspicious so as to support a non-*bona fide* finding is certainly the least troublesome

component of the Department's analysis.  Commerce "compared the quantity and unit price of

the sale under review to the quantities and unit prices of sales of similar subject merchandise,

with similar sales terms" reported by other importers during the same time frame.  J.A. Tab 10 at

4.  In so doing, Commerce noted that the sales price of [[                        ]] was "[[

]] than the unit price reported [] for sales of xanthan gum of the same grade, and with

similar terms," *id.*, as well as [[      ]] and [[                ]] than the comparators "[a]fter reducing

[Jianlong's] sales price by [constructed export price] adjustments, U.S. movement expenses,

international freight expenses and irrecoverable value added tax . . . ."  *Id.* at 4 n.25.  Yet,

although sales price may weigh heavily in the "totality of the circumstances" test, on its own and

without the support of additional findings, there is not substantial evidence to maintain

Commerce's conclusion that a possibly atypical sales price here is suggestive of a non-*bona fide*

transaction.[4]

Potentially of import in the analysis of the sales price, Jianlong also argues that

Commerce impermissibly rejected "factual information [offered] to rebut, clarify, or correct

factual information placed on the record of the proceeding by the Department . . . ."  19 C.F.R.

§ 351.301(c)(4).  Specifically, Jianlong insists that Commerce's rejection of Exhibits 1, 2, and 3

and Exhibits 5 through 9 submitted in response to new factual information placed on the record

in the Department's Preliminary *Bona Fide* Sales Analysis, J.A. Tab 10, was improper.  Resp. to

Req. to Reject Jianlong's Submission, J.A. Tab 12; *see also* Deadline for Submission of

Comments on New Factual Information, J.A. Tab 11.  Commerce contends that the

documentation was properly rejected because: A) Exhibits 1, 2, and 3 were submitted to confirm

the accuracy of the sales price comparators rather than to "rebut, clarify, or correct" that data and

---

[4] Additionally, Jianlong argues that Commerce "failed to consider the type of customers for, the sales terms (e.g., quantities) of, and timing differences between, the compared sales."  I&D Mem. 9.  Commerce declined to consider those factors, stating that it considers the best information available.  *Id.* at 10.  Rather than reject those factors out of hand, Commerce ought to weigh their significance in its continued "totality of the circumstances" assessment.  *See Catfish Farmers*, 33 CIT at 1262–63, 641 F. Supp. 2d at 1369 ("An examination of whether a sale is a bona fide transaction may include a variety of . . . factors, depending upon the circumstances of each case.").  Ultimately, Commerce may, in its discretion, determine that these factors are not indicative of either a *bona fide* or non-*bona fide* sale, but it should not simply dismiss them as inapplicable and unworthy of mere consideration.

B) Exhibits 5 through 9 were offered to rebut the Department's analysis, not any "factual

information placed on the record of the proceeding."  I&D Mem. 13–14; Rejection Mem., J.A.

Tab 14 at 1–2.  As such, Commerce considered Jianlong's submission to be untimely filed as it

did not "rebut, clarify, or correct" factual information the Department had put on the record.  J.A.

Tab 14 at 2 (citing 19 C.F.R. § 351.302(d)(1)(i)).

As this court has previously stated, 19 C.F.R. § 351.301(c)(4) does not define "factual

information to rebut, clarify, or correct" such that deference to Commerce's interpretation of its

own regulation is warranted so long as that construction is not erroneous or inconsistent with the

regulation.  *Husteel Co. v. United States*, 39 CIT __, __, 98 F. Supp. 3d 1315, 1341 (2015)

(citing *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 37 CIT __, __, 925 F. Supp. 2d

1332, 1350 (2013)).  Jianlong submitted Exhibits 5 through 9 in order to "identif[y] the

Department's practice" as well as to rebut or clarify certain "presumption[s]," "description[s],"

and the "reliability" of information placed on the record.  J.A. Tab 12 at 3–4.  By its own

admission, Jianlong intended that these documents rebut Commerce's analysis rather than the

underlying factual information.  *Id.*  As such, Commerce reasonably concluded that Exhibits 5

through 9 were not offered to "rebut, clarify, or correct *factual information* placed on the

record . . . ."  19 C.F.R. § 351.301(c)(4) (emphasis added); *see also RZBC Group Shareholding

Co. v. United States*, 41 CIT __, __, 222 F. Supp. 3d 1196, 1203 (2017) (finding that Commerce

did not err in rejecting documents that attempted to rebut "a new conclusion" made by the

Department).  The court, therefore, sustains Commerce's rejection of Jianlong's submission of

Exhibits 5 through 9.

However, Commerce's characterization of Exhibits 1, 2, and 3 as mere confirmation of

factual information, J.A. Tab 14 at 1, is unreasonable.  Jianlong specifically stated that the

excerpted data used as the basis for comparison by Commerce could not "be relied upon unless the full sales data reported" was considered and so maintained that Exhibits 1, 2, and 3 were offered as "appropriate clarification information."  J.A. Tab 12 at 2–3.  With apparent indifference to Jianlong's justification for its submission, Commerce rejected the information because the Department claimed that Jianlong had "failed to explain how the submission of the full sales data rebuts, clarifies, or corrects the Department's new factual information."  J.A. Tab 14 at 2.  Commerce's reasoning in support of its rejection of Exhibits 1, 2, and 3 was flawed as it failed to consider how those documents may serve to clarify.  *See id.*  A rejection that does not account for the reasons for which the submission was offered runs counter to the regulation's dictates that "[a]n interested party is permitted one opportunity to submit factual information to rebut, clarify, or correct factual information placed on the record of the proceeding by the Department by a date specified by the Secretary."  *See* 19 C.F.R. § 351.301(c)(4).  Because it denied Jianlong its opportunity to clarify new factual information placed on the record, Commerce's determination here that the filing was untimely is "plainly erroneous or inconsistent with the regulation."  *Baroque Timber*, 37 CIT at __, 925 F. Supp. 2d at 1349 (citation omitted).  Commerce must consider the documents' powers to clarify on remand before arriving at a decision on their timeliness.  Therefore, the court remands for further consideration.

In sum, while its rejection of Exhibits 5 through 9 was reasonable, Commerce's "totality of the circumstances" assessment lacks substantial evidence and its rejection of Exhibits 1, 2, and 3 was inconsistent with the Department's regulations.  As such, the court is unable to sustain Commerce's *bona fide* analysis.

## CONCLUSION AND ORDER

For the foregoing reasons, the court remands three issues to Commerce for further consideration in conformance with this opinion.  Accordingly, after carefully reviewing all briefs and the administrative record, it is hereby:

**ORDERED** that the *Rescission* is remanded to Commerce for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce issue a redetermination in accordance with this Opinion and Order that is in all respects supported by substantial evidence and in accordance with law; it is further

**ORDERED** that Commerce provide a reasoned explanation regarding the treatment of sample shipments as entries for consumption under 19 C.F.R. § 351.214(b)(2)(iv)(A) and apply that reasoning to Jianlong's NSR request; it is further

**ORDERED** that Commerce conduct a "totality of the circumstances" analysis sufficiently supported by substantial evidence, explaining how the establishment of Jianlong USA, the timing of the sale, and the sales price support a finding that the transaction in question was, or was not, *bona fide*; it is further

**ORDERED** that Commerce consider the reasons for which Exhibits 1, 2, and 3 were submitted in order to determine if they were timely filed as clarifying information; it is further

**ORDERED** that all other challenged determinations of Commerce are sustained; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its redetermination, which shall comply with all directives in this Opinion and Order; that the Plaintiff and Defendant-Intervenors shall have thirty (30) days from the filing of the redetermination in which to file comments thereon; and that the Defendant shall have thirty (30) days from the filing of Plaintiff's and Defendant-Intervenors' comments to file comments.

 /s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated:  December 21, 2017
          New York, New York